UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ALBERT PINCKNEY,                :
                                                      :   CIVIL ACTION NO. 3:22-0751
                                :
           **Plaintiff**        :
                                :   (JUDGE MANNION)
     v.                         :
                                :
BERNADETTE MASON, *et al.*,     :
                                :
           **Defendants**       :
                                :

**MEMORANDUM**

**I. BACKGROUND**

Plaintiff, Albert Pinckney, an inmate currently confined at the Mahanoy State Correctional Institution, Frackville ("SCI-Mahanoy"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are Correct Care Solutions LLC, Wellpath, LLC, PA Jenna Williams, Dr. Peter Baddick, and Dr. Pinky Bora Saikia, ("Medical Defendants") and Department of Corrections ("DOC") employees: Superintendent Bernadette Mason and Medical Administrator Christian Hause, ("Corrections Defendants"). Id.

Plaintiff seeks compensatory and punitive damages, alleging that he "suffered from delay of treatment, negligence, malpractice, Eighth

Amendment violation, violation of the ADA, RA and medical code of Ethics" for the treatment of a shoulder injury." Id.

Presently before the Court are two separate motions to dismiss filed on behalf of the Corrections and Medical Defendants. (Docs. 18, 23). The motions are fully briefed and ripe for disposition. For the reasons set forth below, the Court will grant both motions to dismiss.

## II. FACTUAL ALLEGATIONS IN THE COMPLAINT AND SUPPLEMENTAL COMPLAINT

Plaintiff's complaint and supplement complains of "three claims with multiple events combined into one claim." (Doc. 1 at 5). Initially, Plaintiff alleges that in June, 2021 "Event One", described as "a shoulder injury occurred" as follows:

> [W]hile working in the Prison's Food Service Department, Plaintiff contends while working he was directed by his instructor to push a food-serve cart out of the inmate dining hall; subsequently, while pushing said car Plaintiff heard a loud and painful pop in his left shoulder bade, it literally had felt like someone had punched Plaintiff in his back.
>
> Plaintiff immediately went to his instructor/Supervisor in the kitchen one; Mrs. Miller at the time, as since she has retired. After reporting said injury, Mrs. Miller wrote immediately a work related injury report and sent Plaintiff to medical for triage. Subsequently, once at medical's triage a nurse NOT named at this time had looked at Plaintiff's left shoulder, took a photograph of the injury, i.e., ["Why Plaintiff is not fully aware, because the injury is on the inside of the shoulder blade area"]; consequently, thereof and

after to date Plaintiff avers he was "NOT" and had "NOT been adequately, properly and timely treated and cared for, Plaintiff thereinafter was simply sent back to his Housing Unit in severe pain and was unable to move his left shoulder without further extreme pain and sufferings.

Thereafter, Plaintiff avers that he was called to the medical department, in which was on a Tuesday where he was seen for Mandatory sick-call for being prior triaged, in which was performed by an un-named male PA-C medical staff member. During the sick-call visit this PA-C had asked Plaintiff if he could lift his left arm; Plaintiff's response was very, very little without severe pain.

Thereof this PA-C afforced Plaintiff "ONLY" two Tylenol and three muscle relaxers, "NO" MRI or MRA was ordered/prescribed or suggested. Thus, Plaintiff was "NOT" adequately or properly treated or cared for, in violation of "AMERCIAN'S WITH DISABILITY'S ACT," "THE RA ACT, under Title II," and "EIGHTH AMENDMENT" violation, "WILFUL NEGLIGENCE" and "A WANTON ACT TO PREJUDICE" and "DENY TREATMENT," thus, also violations of "MEDICAL CODE OF ETHICS".

This same said PA-C told Plaintiff I'll prescribe you five days of muscle relaxers again "NO" MRI or MRA was ordered, no brace for support, no order to be sent out to an outside hospital, let alone a prompt X-ray; thereof, Plaintiff was placed on Acetaminophen for five days, six tablets once a day as needed. Subsequently, thereafter, Plaintiff suffered in extreme pain, was and still currently is unable to fully move, let alone lift his left arm in the air.

Plaintiff argues that simply being medicated with medications particularly that did "NOT" work was "NOT" an adequate or proper treatment/care of fix. Thereafter, Plaintiff had filed and FULLY exhausted DC-804, Prt. 1 in-house Grievance.

Thereafter, the medical department had finally decided after multiple sick call, medical visits to take "ONLY" at the time an in-

>house X-ray, in which obviously will not and did not show anything torn or ripped in Plaintiff's left shoulder as an X-ray is not proper care, let alone treatment. Up until that date again an MRI was unconstitutionally denied. Consequently, the SAME said Defendants in the initial CAUSE of ACTION named, particularly at the Medical Department tried ordering/prescribing physical therapy, in which was a failed attempt as the pain was extremely unbearable; i.e. ["physical therapist does NOT fix, correct or remedy a torn shoulder, only surgery"], in which to [date] I have been denied clearly adequate and proper treatment and care of my now work related injury.
>
>Thus, my work related shoulder injuries CAUSED by said named defendant' are HEREWITH being Supplemented/Amended as an actual "ALLEGED" allegation and event for review to determined by a DEMANDED jury at trial; with the PLEADING for AMENDED AWARD for punitive and compensatory damages in the amount NOT less than $150,000.00 dollars with the promise of adequate and proper pain medications, surgery and thereafter physical therapy by an outside therapist; with the promise of ANY future care and surgeries thereafter.

(Doc. 10 at 2-4).

>Plaintiff, then describes "Event Two" occurring as follows:
>
>Thereafter, many month(s) past; four month(s) actually and on the date of November 5, 2021, finally the MRI Imaging test was performed.
>
>Dr. Bora Pinky Saikis upon review of the MRI Imaging had determined that my right should is deteriorated and needs surgery. Dr. Bora Pinky Saikis had placed an order for approval of such surgery. However, to date no said approval or surgical procedure done.

(Doc. 1 at 9).

>Finally, Plaintiff's "Event Three" is described as follows:

> I had placed a sick-call slip into medical to be seen about a severe and painful cough, subsequently, thereafter filing said sick-call slip the medical staff and Officer's came to retrieve me and my celly that evening and housed in the RHU quarantine block for (15)-days for their holding possible COVID-19.
>
> I remained in the RHU quarantine block with NO adequate housing, punished as if I were in the RHU for behavior infraction. Medical only checked on me once a day if that and deficiently DID NOT treat me for the cough let alone any medical ailment, particularly my severe and painful cough. After the (15) days had surpassed I was released from the RHU quarantine block on 9/7/21 and re-housed in general population on my old housing unit FA-Block. I had to place, yet another sick-call slip into medical and what I had founded was that it was a medical/severe medical reaction to combination of blood pressure pills that medical staff here placed me on they had combined two medications of Lisinopril and HCTZ for one 20mgs and second one 25 mgs.

(Doc. 1 at 10).

On September 13, 2021, Plaintiff filed Grievance No. 946624, challenging all three "events". (Doc. 1-3 at 1). In an Initial Review Response dated October 25, 2021, Plaintiff's Grievance No. 946624 was denied as follows:

> Upon reviewing your medical record, I can see that you were seen by the practitioner on 6/16/2021 with complaints of Right should pain. The practitioner reviewed the X-ray report with you and discussed that a consult was placed for an MRI of your Right shoulder. You were instructed to return to sick call if symptoms worsened and you verbalized understanding of same.
>
> You were seen again in sick call on 6/30 asking if there is any news if you were going for your test. You told the practitioner the

pain is constant and the Motrin only helps temporarily and is starting to hurt your stomach. You also told the practitioner you are having a hard time sleeping because the pain radiates down your arm and you are having tingling sensations as well. Upon assessment the practitioner noted you were awake alert and oriented, you had full range of motion and strength of left upper extremity with intact, reflexes, decreased range of motion of right shoulder to approximately 90-100 degrees lateral abduction until pain felt. No tenderness to palpation, full grip strength, no deformity noted. Full range of motion noted of the neck, no deformity noted, no active spasms, no masses, no skin discoloration. The practitioner explained to you that a written consult was previously completed, you declined NSAIDS, she discussed other medication options including proper use and side effects and agreed to try Pamelor. PT consult previously placed as well. Practitioner also discussed stretches and exercises. Lastly discussed if no improvement or worsening of symptoms you needed to make medical aware of return to sick call as needed. Placed sick call to ask if you were approved to go out for imaging of your shoulder. The practitioner explained it was approved and all was placed in Sapphire however, we didn't have a date yet. You had no further questions at that time.

Saw Dr. Bora in sick call on 8/11/21 with increased shoulder pain and plantar pain and also had complaints of sinus pressure. Upon assessment the Dr. Noted no cough, you denied body aches. You stated you stopped taking Pamelor because it's not working. You also admitted that Tylenol not working. Dr. started you on Augmentin for your sinuses and awaiting MRI.

On 8/22/21 you handed the pill line nurse a sick call slip that stated you had sinus and chest congestion. Due to symptoms you were escorted up and requested to do a COVID swab. You became agitated and initially refused the COVID PCR test. Security escorted you the RHU C-Pod where they house all suspected +COVID cases. You were housed in C-Pod from 8/23/21 to 8/27/21 until you were taken to Lehigh Valley Hospital East for the Monoclonal Antibody infusion and from there you were admitted to the infirmary when you returned back to the

institution. Upon the Dr.'s assessment the next morning he noted that you denied shortness of breath and the nurse assisted you to ambulate in the room without your oxygen and your pulse ox remained stable at 97-98% on room air. Dr. Baddick then left orders to hold the o2 at this time and recheck your pulse ox Q15 minutes x 1hour and then Q1hourx3 hours. The Dr. wanted your oxygen levels to be maintained about 94% and they were. You were then seen again on 08/31/21 by the Dr. on morning rounds and denies shortness of breath, your pulse ox on room air remained 97-98% with activity. You denied any complaints at that time. Dr. medically cleared you to be discharged back to the C-Pod RHU quarantine block. You were in C-Pod quarantine block for 14 days, while there you had no complaints or pain or discomfort while nursing did their rounds. Dr. Baddick saw you on 09/07/21 on morning rounds and noted you were asymptomatic x3 days and medically discharged you to general population on 09/7/21.

You were then in sick call on 9/10/21 stating you still have pain in your right shoulder and a chronic cough for more than a year intermittently that is not from COVID. Dr. notes that it could possibly be your ACE inhibitor which is your Lisinopril. Dr. did order and X-ray to r/o any disease and did educate you to return to sick call if no better or if this continues to get worse.

You were on the call out on 9/15/21 for Md line with Dr. Baddick and you were a NO SHOW, the block was called for you to make your appointment and you still were a NO SHOW.

You came up as a triage on 9/18/21 and were sent to the OSH via ambulance for chest pains and a cough. You rated your chest pain at an 8. VS were stable -97.4-73-18-120/68-98% on room air. You were awake alert and oriented x3. You state the chest pains were sharp and started about 2 hours prior to coming up for triage and the cough started a week ago. Speech was clear, respirations easy and unlabored, lungs clear throughout bilaterally. Abdomen soft non-distended +bs x 4quads. Skin warm dry and intact. No edema noted, brisk capillary refill noted, +pedal pulses noted bilaterally. EKG completed. Dr. ordered

ASA to be administered and to be sent to OSH for further evaluation and Inmate sent via EMS. You returned from the outside hospital and was admitted the infirmary. You were seen on 9/19/21 by the practitioner who then told you that the hospital diagnosed you with pleurisy (which is an inflammation of the thin layer of tissue that lines the lungs and chest walls). Pleurisy can be very painful and cause chest pains like you were having. When the practitioner came in to see you, you were exercising in the room. You deny chest pains, shortness of breath, palpitations, or additional complaints at this time. Upon assessment you were awake alert and oriented, respirations easy and unlabored, lungs clear throughout on room air. VS stable 97.0-66-16-124/88-97% on room air. The practitioner did tell you he wanted you to stay in the infirmary yet to monitor you and you verbalized understanding of same. You were seen on shift rounds by the nurses with no complaints. You were then seen by Dr. Baddick on 9/20/21 on daily morning rounds and he noted you were awake alert and oriented with no medical distress noted. You denied shortness of breath or chest pains at present. He did make you aware that he was discharging you back to the block to general population on 9/20/21.

You were then seen in MD line on 10/7/21 for chronic right shoulder pain and you did see Dr. Baddick. Your MRI of your right shoulder is scheduled but you are awaiting an appointment. Dr. placed you on a Prednisone taper and will also see you after your MRI to review your MRI results with you. Dr. noted Prednisone taper for 9 days. You have been educated by the practitioners, nurses, and Dr.'s about medication options and the X-rays that have been done. Continue to utilize sick call as needed for any symptoms you are experiencing as needed.

The allegations in this grievance are found to be without merit, therefore the grievance is denied.

(Doc. 1-3 at 3-4). Plaintiff's medical care was upheld as "reasonable and appropriate" through the Final Appeal Decision issued on March 17, 2022. (Doc. 1-3 at 9).

On January 9, 2022, Plaintiff filed Grievance No. 963182 regarding the care he was receiving for his shoulder injury. (Doc. 10-1 at 5). On January 26, 2022, Plaintiff's Grievance No. 963182 was denied as follows:

> You claim that your left shoulder injury is not being treated properly and you are requesting an MRI or MRA study to diagnose an injury. An MRA (magnetic resonance angiogram) likely would not be ordered for this particular issue due to the nature of the complaint not being cardia (heart) related. After reviewing your medical chart, you were seen on 12/28/2021 by the PA and ordered oral pain medications to help treat discomfort. After returning to see a provider again on 1/3/2022, she ordered you more rest and heat to the affected area combined with pain medication from previous appointment. You were seen a third time on 1/14/2022 where an x-ray was ordered. An MRI is used for diagnosing soft tissue injuries and typically can not and will not be ordered prior to exhausting less invasive efforts first. Your x-ray was completed on 1/19/2022; results from this will help determined whether or not the provided deems an MRI order medical necessary at this point. To date, the providers have been treating your ailment appropriately and just according to their professional opinion.
>
> Due to the above stated and your grievance lacking arguable facts, this grievance is denied.

(Doc. 10-1 at 1). This decision was upheld through Final Appeal to the Secretary's Office of Inmate Grievances and Appeals. (Doc. 10-1 at 8).

### III. MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule

12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

## IV. Discussion

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton

infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment ..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment,

or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912

F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

      Here, Plaintiff's own documentation demonstrates that Plaintiff received substantial medical attention, and that the attention Plaintiff received lacks that requisite deliberate indifference to support a Section 1983 claim. Specifically, Plaintiff was immediately evaluated and treated after hurting his shoulder pushing a cart in the Food Service Department. Additionally, Plaintiff was evaluated at outside hospitals, prescribed X-rays and an MRI, various pain medications, physical therapy, a medical lay-in and an approval for surgery. There is no indication, whatsoever, that at any time medical treatment was denied or intentionally withheld. Plaintiff own exhibits establish that at all times, Plaintiff was thoroughly examined and immediately recommended for testing or medication based on his symptoms.

      As to his cough, he was also followed by medical. He complained of sinus pressure and chest congestion for which he was tested for COVID-19. He was quarantined and taken to the hospital for infusion therapy. Upon return to the institution, his pulse ox was monitored and after three (3) days of being asymptomatic, he was discharged back to the block. A few days

later, he was seen on sick call at which time he reported a chronic cough for more than a year intermittently. The doctor advised that it could possibly be from his ACE inhibitor, Lisinopril, and an x-ray was ordered to rule out disease. Shortly thereafter, he was sent to the hospital via ambulance for chest pains and a cough. He was diagnosed with pleurisy. He was admitted to the prison infirmary upon his return for continued monitoring.

At best, Plaintiff's allegations demonstrate Plaintiff's disagreement with the type of treatment rendered. However, his mere disagreement with the course of action that the medical department took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind) ). This is particularly so in light of the fact that there are no facts set forth in Plaintiff's complaint or attached exhibits that demonstrate that any named Defendant intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment

- 15 -

of the medical staff at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim against any of the named Defendants. See White, 897 F.2d at 108-110. As such, both the Medical and Corrections Defendants' motion to dismiss Plaintiff's Eighth Amendment medical deliberate indifference claim will be granted.

### B. ADA and RA Claims

Plaintiff's ADA and RA claims will be considered together because "the substantive standards for determining liability are the same." Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 288 (3d Cir. 2019) (citation omitted). Individual defendants are not liable under the ADA or Rehabilitation Act. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002). To prevail on his claims under Title II of the ADA and Section 504 of the RA, Plaintiff must show: (1) "he is a qualified individual with a disability"; (2) he "was precluded from participating in a program, service, or activity, or otherwise was subject to

discrimination"; (3) "by reason of his disability." Id. at 288–89; 42 U.S.C. §12133.

Title II of the Americans With Disabilities Act ("ADA") provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132, As used in Title II of the ADA, "public entity" is defined as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 U.S.C.S. §24102(4)])." 42 U.S.C. §12131(a). State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of §12132 applies only to public entities not individuals. Yeskey v. Commonwealth, 76 F.Supp.2d 572, 575 (M.D. Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). None of the moving Defendants qualify as a public

- 17 -

entity, nor do the facts of Plaintiff's complaint indicate, in any way, that he is a qualified individual with a disability that was excluded from participation in or denied the benefits of some public entity's services, programs or activities. Therefore, the ADA and RA are inapplicable, and this claim will be dismissed.

### C. Claims against Wellpath and Correct Care Solutions

Wellpath and Correct Care Solutions have contracted with the DOC to provide medical care to inmates housed at SCI-Mahanoy and other state institutions. The Third Circuit, however, has held that "a private health care company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability.' " Sims v. Wexford Health Sources, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, a plaintiff must allege that the private healthcare company had "a relevant ... policy or custom, and that the policy caused the constitutional violation [he] allege[s]." Natale, 318 F.3d at 584; see also Lomax v. City of Philadelphia, No. 13-cv-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, ... it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."). Here, Plaintiff fails to

allege any facts demonstrating that the alleged violations of his Eighth Amendment rights resulted from any policies, practices, or customs set forth by Defendants Wellpath or Correct Care Solutions. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (noting that to assert a plausible claim, the plaintiff "must identify [the] custom or policy and specify what exactly that custom or policy was"). For that reason alone, Plaintiff's claims against Defendants Wellpath and Correct Care Solutions are subject to dismissal.

### D. State Law Claims

The Court declines to exercise supplemental jurisdiction over any state law claims. When a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. See 28 U.S.C. §1367(c)(3). The Court's decision regarding the exercise of supplemental jurisdiction is one that should be based on "the values of judicial economy, convenience, fairness, and comity." See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal claims have been dismissed and only state law claims remain, the balance of these factors indicates that the remaining claims properly belong in state court. See id. In the absence of a viable federal claim and finding nothing to distinguish this matter from the

ordinary case, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See id. at 350 n.7. Accordingly, the Court having dismissed all federal claims, will dismiss Plaintiff's state law claims of profession negligence against Defendants pursuant to 28 U.S.C. §1367(c)(3).

## V. CONCLUSION

For the reasons set forth above, the Court will grant both the Corrections and Medical Defendants' motions to dismiss and will close the above captioned action.

A separate Order shall issue.

*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

**Dated: March 27, 2023**
22-0751-01